UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SAMUEL MARTIN,<br><br>      Plaintiff,<br><br>   v.<br><br>STATE OF WASHINGTON, DAMANJEET CHUGH, and ROBERT "RUSTY" SMITH,<br><br>      Defendants. | NO:  CV-07-60-RMP<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Mr. Martin, a state prisoner, has had chronic knee problems for most of his life. On March 27, 2004, Mr. Martin reinjured his knee while playing basketball (Ct. Rec. 52-1 at 18). On July 5, 2007, Martin instituted this civil rights action under 42 U.S.C. 1983, complaining of the treatment he received by staff at Airway Heights Correction Center after the injury (Ct. Rec. 7). Mr. Martin named as defendants Dr. Damanjeet Chugh, one of the doctors who treated him, and Robert "Rusty" Smith, the Health Care Manager I for the Airway Heights Correctional Center Heath Services. Martin filed an amended complaint on July 5, 2007 (Ct.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~1

Rec. 9). It was dismissed *sua sponte* by the district court for failing to comply with 28 U.S.C. §§ 2925(e)(2) and 1915(b)(1) (Ct. Rec. 10). Martin appealed the district court's ruling. The circuit court affirmed the district court's dismissal of all claims against the State of Washington, and reversed in part, finding that Martin had a colorable eighth amendment claim against Defendants Chugh and Smith (Ct. Rec. 16 at 2).

Before the Court is Defendants' summary judgment motion (Ct. Rec. 49). The Court has reviewed Defendants' memorandum and reply (Ct. Recs. 50, 77) and Plaintiff's response (Ct. Rec. 71), and the remaining pleadings and file in this case.

## I. BACKGROUND

Mr. Martin has been incarcerated most of his life, both as a juvenile and an adult (Ct. Rec. 54-1 at 8). Mr. Martin's knee trouble began at the age of four when his leg was broken (Ct. Rec. 54-1 at 7)[1]. At the age of 12, the knee was injured again (Ct. Rec. 54-1 at 7). In 1980, at approximately 16 years of age, Mr. Martin

---

[1] In his response to Defendants' Summary Judgment, Mr. Martin challenges the accuracy of the medical records from the meeting (Ct. Rec. 71 at 11). However, the records have been properly authenticated by Dr. Chugh and Dr. John Smith, the Airway Heights Correctional Center Medical Director (Ct. Rec. 79; Ct. Rec. 52 at 2).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~2

had his first knee surgery to remove a bone growth near the knee (Ct. Rec. 54-1 at 7). After surgery, Mr. Martin had numbness in the knee. His knee would also dislocate when playing sports or while using stairs (Ct. Rec. 54-1 at 7). In 1987, at the approximate age of 23, Mr. Martin had a patellar transfer surgery on his knee. After surgery Mr. Martin had severe foot pain and arthritis (Ct. Rec. 51 at 3). Sometime in 1994, Mr. Martin reinjured his knee while playing basketball (Ct. Rec. 54-1 at 7). From approximately 1994 to 2004, Mr. Martin had regular knee pain with minor instances of his knee locking (Ct. Rec. 54-1 at 7-8).

The seminal event in the current litigation occurred on March 27, 2004. That day, Mr. Martin hurt his knee again while playing basketball (Ct. Rec. 52-1 at 18). It is undisputed that in the past, when Mr. Martin injured his knee, he usually received first-line medical treatment consisting of a combination of anti-inflammatory medicine, ice, and a wrap or knee brace (Ct. Rec. 54-1 at 13). This treatment plan was sufficient to allow Mr. Martin to recover until he could play basketball again (Ct. Rec. 54-1 at 15).

On March 27, 2004, when Mr. Martin reinjured his knee, he was wheeled to the infirmary and examined by two nurses who provided him with a crutch and ice (Ct. Rec. 51 at 5). He was prescribed anti-inflammatory medicine and states that he may have been issued a knee brace (Ct. Rec. 51 at 5; Ct. Rec. 54-1 at 19). The

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT~3

nurses also had Mr. Martin assigned to a lower bunk and a lower tiered cell to help limit stress on his injured knee (Ct. Rec. 54-1 at 22).

Mr. Martin was to follow up with a doctor the following week (Ct. Rec. 52-1 at 17). On March 30, 2004, Mr. Martin was seen by Defendant Dr. Chugh. It is contested whether or not Dr. Chugh "examined" Mr. Martin (Ct. Rec. 72 at 2),[2] but it is uncontested that Dr. Chugh interviewed Mr. Martin, viewed Mr. Martin's knee, determined that the knee was not swollen, and that Mr. Martin could bend his knee (Ct. Rec. 54-1 at 19). Mr. Martin requested an x-ray, but Dr. Chugh did not deem an x-ray necessary (Ct. Rec. 52-1 at 19).

Shortly after seeing Dr. Chugh, Mr. Martin filed a grievance (Ct. Rec. 53-1 at 4). In the grievance, Mr. Martin claimed that "[d]uring the examination of my knee," Dr. Chugh "refused to order x-rays" (Ct. Rec. 53-1 at 4). The grievance was reviewed by Defendant Robert "Rusty" Smith, the Health Care Manager I for the Airway Heights Correctional Center Heath Services (Ct. Rec. 53 at 2). Mr. Smith is not a medical provider or medical doctor and does not second guess or challenge medical decisions (Ct. Rec. 53 at 2). However, Mr. Smith's job does include reviewing medical records to determine whether patients received treatment (Ct. Rec. 53 at 2). Mr. Smith reviewed Mr. Martin's grievance and the

---

[2] Despite Mr. Martin's current contention that he was not examined by Dr. Chugh, in his initial grievance Mr. Martin stated that he was examined (Ct. Rec. 53-1 at 4).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~4

medical record, noted that there was no swelling of the knee, that Mr. Martin was able to bend his knee, determined that medical treatment had been given, and denied the grievance (Ct. Rec. 53 at 2).

After the denial of the grievance, Mr. Martin appealed. As a result of the appeal, Mr. Martin was seen by Debbie Clinton, a certified physician assistant, on May 5, 2004 (Ct. Rec. 52-1 at 19). Ms. Clinton reviewed Martin's medical history, examined the knee, and observed that Mr. Martin had no acute distress and that the knee appeared stable. Nevertheless, given the history of events, Ms. Clinton ordered an x-ray and physical therapy (Ct. Rec. 52-1 at 19). The x-ray revealed a small fragment of ossification, known as a "joint mouse," present in the joint space of Mr. Martin's knee (Ct. Rec. 52-1 at 19).

During a May 13, 2004 appointment, a physical therapist reported no swelling in Mr. Martin's knee and that his range of motion in the injured right knee was similar to the range of motion in his uninjured left knee (Ct. Rec. 52-1 at 19). There were no signs of the knee locking or popping, though there was some pain with palpitation (Ct. Rec. 52-1 at 19). The physical therapist devised an exercise program for Mr. Martin (Ct. Rec. 52-1 at 19).

On May 20, 2004, the physical therapist recommended an orthopedic consult (Ct. Rec. 52-1 at 19). On July 14, 2004, Mr. Martin saw Dr. Eric Bowton, an orthopedic specialist (Ct. 52-1 at 19). Dr. Bowton noted upon examination that the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~5

kneecap tracks well, flexed well, and that there was minimal crepitus (Ct. Rec. 52-1 at 21). Dr. Bowton also noted that Mr. Martin's knee had abnormalities from pre-existing injuries and surgeries as well as post-traumatic arthritis (Ct. Rec. 52-1 at 21). Dr. Bowton scheduled a diagnostic arthroscopy to remove any loose bodies and to deal with any meniscus tears (Ct. Rec. 52-1 at 21).

The diagnostic arthroscopy was done on August 5, 2004. Plaintiff repeatedly characterizes the surgery as removing bone fragments and repairing tears in the ligaments on either side of the knee (Ct. Rec. 71 at 9; Ct. Rec. 73 at 5). This characterization conflicts with Mr. Martin's own exhibit, Dr. Bowton's surgical report (Ct. Rec. 73-3 at 33), that Mr. Martin cites for support (Ct. Rec. 72 at 3). Dr. Bowton's report states that there was a single bone fragment that corresponded to the x-ray finding (Ct. Rec. 73-3 at 33). Additionally, the report states that although the meniscus appeared to have suffered some abrasions, there "were no frank tears" (Ct. Rec. 73-3 at 33).

Shortly after surgery, Mr. Martin was in good spirits and optimistic about his knee (Ct. Rec. 52-1 at 22); however, within a few months, Mr. Martin was regularly seeking medical help for continued problems. Despite his continued chronic knee problems, Mr. Martin recently has claimed that he believes his

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT~6

condition has improved as a result of Dr. Bowton's surgery (Ct. Rec. 73 at 5).[3]

Mr. Martin's § 1983 complaint is that by limiting treatment of his knee, Defendants have subjected Mr. Martin to cruel and unusual punishment in violation of his rights under the eighth amendment, made applicable to the states by the Fourteenth Amendment. Specifically, Martin claims that Dr. Chugh violated Mr. Martin's rights when he refused to "examine" Mr. Martin and refused to order an x-ray, which Mr. Martin alleges caused a delay in needed surgery and resultant ligament tears in his knee (Ct. Rec. 71 at 5; Ct. Rec. 54-1 at 28). Mr. Martin also claims that Defendant Rusty Smith violated Mr. Martin's rights when he "refused to order anyone in the health care department to examine plaintiff, or provide adequate and appropriate medical care to plaintiff's injured knee" (Ct. Rec. 9 at 4).

## II.  APPLICABLE LAW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A key purpose of

---

[3] This is in conflict with Mr. Martin's past statements that his knee was in worse shape after the surgery than before and that the surgery was of no help (Ct. Rec. 52-1 at 22; Ct. Rec. 52-1 at 24; Ct. Rec. 54-3 at 38).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7

summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party must demonstrate to the court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. *T.W. Elec. Service, Inc.*, 809 F.2d at 631. If the nonmoving party produces evidence that contradicts evidence produced by the moving party, the court must assume the truth of the nonmoving party's evidence with respect to that fact. *Id.* The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(e). In addition, courts must construe *pro se* pleadings liberally. *Resnick v. Hayes*, 213 F.3rd 443, 447 (9th Cir. 2000).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~8

Mr. Martin has alleged a claim under 42 U.S.C. § 1983 for violation of his eighth amendment rights. The eighth amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." 42 U.S.C. §1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

For an inmate to state a claim under § 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an 8th Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103-104).

> A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. . . . The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~9

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds; WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

To demonstrate deliberate indifference, a prisoner must allege facts sufficient to indicate a culpable state of mind on the part of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Deliberate indifference exists when an official knows of and disregards a serious medical condition and the official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The Supreme Court, in *Estelle v. Gamble*, 429 U.S. 97 (1976), gave the following examples of deliberate indifference by doctors: a doctor's choosing the "easier and less efficacious treatment" of throwing away the prisoner's ear and stitching the stump as possibly attributable to "deliberate indifference . . . rather than an exercise of professional judgment," *Williams v. Vincent*, 508 F.2d 541 (2nd Cir. 1974); injection of penicillin with knowledge that prisoner was allergic, and refusal of doctor to treat allergic reaction, *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974), cert. denied sub nom. *Thomas v. Cannon*, 419 U.S. 879 (1974); refusal of paramedic to provide treatment, *Jones v. Lockhart*, 484 F.2d 1192 (8th Cir. 1973); and prison physician's refusal to administer the prescribed pain killer and rendering leg surgery unsuccessful by requiring prisoner to stand despite contrary

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~10

instructions of surgeon, *Martinez v. Mancusi*, 443 F.2d 921 (2nd Cir. 1970), cert. denied, 401 U.S. 983 (1971). *Estelle v. Gamble,* 429 U.S. 97, 105 (1976).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment, however, are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court. . . .

*Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

The ninth circuit has held that mere indifference, medical malpractice, or negligence also will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).

### III.  DISCUSSION

The present case has significant parallels to *Sanchez v. Vild*, 891 F.2d 240 (9th Cir. 1989). In *Sanchez*, the plaintiff alleged deliberate indifference to a serious medical need when prison officials chose not to operate on the plaintiff's painful boils, but instead pursued alternative treatments. *Sanchez v. Vild*, 891 F.2d

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~11

240, 242 (9th Cir. 1989). The basis of plaintiff's claim was that a prison doctor, during the course of treatment, advised him that surgery was necessary. *Id.* Prison officials moved for summary judgment supported by affidavits and moving papers showing subsequent medical attention by doctors, physician assistants, and outside physicians. *Id.* Plaintiff also received treatment and medication for his ailment. *Id.* The treatment helped clear the symptoms although they reoccurred. *Id.* In affirming the district court's order granting defendants' motion for summary judgment, the ninth circuit stated that at most, plaintiff had raised a difference of medical opinion which was insufficient to state a claim for deliberate medical indifference. *Id.*

In the present case, Mr. Martin also received extensive medical attention after his March 27, 2004 injury (Ct. Rec. 52-1 at 18). He had been seen repeatedly by nurses, physical therapists, physician assistants, doctors, and orthopedic surgeons (Ct. Rec. 52-1 at 18). He received both first-line treatment and graduated treatment, including surgery (Ct. Rec. 52-1 at 18).

Defendants submitted a sworn declaration by a supervising physician supporting that because Mr. Martin had no swelling and had good range of motion on March 30, 2004, Dr. Chugh's decision not to order an x-ray was reasonable (Ct. Rec. 52 at 3). Plaintiff has not submitted any evidence beyond his own declaration to support that Dr. Chugh's decision not to order an x-ray was the result of

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT~12

"deliberate indifference" to Mr. Martin's medical needs.  Conversely, Defendants have provided sufficient evidence to support the conclusion that Dr. Chugh's decision not to order an x-ray was within reasonable medical judgment.  *See Estelle v Gamble,* 429 U.S. 97, 107 (1976) ("the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment").

In addition, Mr. Martin does not provide any evidence beyond his own declaration that Dr. Chugh's decision not to x-ray his knee resulted in a delay of surgery or caused Mr. Martin any harm, such as tears to the ligaments in his knee (Ct. Rec. 9 at 5)[4].  The ninth circuit has held that delay alone does not constitute a violation of eighth amendment rights, unless the delay causes harm.  *Wood v. Housewright,* 900 F.2d 1332, 1335 (9th Cir. 1990).  Mr. Martin's own exhibit, Dr. Bowton's surgical report, states that Martin's ligaments had "no frank tears" (Ct. Rec. 73-3 at 33).

In sum, even when viewing the evidence in the light most favorable to Mr. Martin, Mr. Martin's evidence fails to raise a genuine issue of material fact that Dr.

---

[4] The time frame of any delay is from Dr. Chugh's examination on March 30, 2004, and Debra Clinton's examination where she ordered an x-ray on May 5, 2004.  Additionally, it is significant that after his injury Mr. Martin received numerous medical treatments before and after his interview with Dr. Chugh (*see supra*).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~13

Chugh's actions constituted deliberate medical indifference to Mr. Martin's serious medical needs or caused Mr. Martin harm. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Mr. Martin also alleges that Defendant Rusty Smith's actions violated Mr. Martin's eighth amendment rights, because without performing an examination of plaintiff's knee, reviewing plaintiff's medical records, or interviewing plaintiff to ascertain the extent of injury to the knee, defendant Smith refused to order anyone in the health care department to examine plaintiff, or provide adequate and appropriate medical care to plaintiff's injured knee (Ct. Rec. 9 at 4). However, Defendants have submitted Mr. Smith's declaration swearing that in his position as a Health Care Manager I, he does not make, second guess, or challenge medical decisions (Ct. Rec. 53 at 2). His job is to simply review records to determine whether patients received treatment.

Mr. Smith reviewed Dr. Chung's notes and summarized them in his response to Martin's grievance (Ct. Rec. 53-1 at 4). Plaintiff has failed to provide sufficient evidence to raise a genuine issue of material fact that Mr. Smith's actions constituted deliberate indifference to Mr. Martin's serious medical needs or violated his constitutional rights under the eighth amendment. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~14

## IV.  CONCLUSION

Mr. Martin has failed to provide sufficient evidence to raise a genuine issue of material fact relating to his §1983 claim.  Plaintiff has failed to support his allegations that the actions of either Dr. Chugh or Mr. Smith constitute deliberate indifference to his serious medical needs or caused him harm, as required for liability under 42 U.S.C. §1983.  Therefore, the Court grants Defendants' motion for summary judgment.

The Court finds that there is no need for further analysis regarding Defendants' potential qualified immunity, because of the Court's finding that no constitutional rights have been violated by either Defendant.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  Accordingly,

**IT IS HEREBY ORDERED**:

1. Defendants Motion for Summary Judgment (**Ct. Rec. 49**) is **GRANTED**.

2. All other pending motions, if any, are **DENIED AS MOOT**.

The District Court Executive is directed to enter this Order, provide copies to all parties, enter judgment, and close the file.

**DATED** this 23rd day of July, 2010.

                                        *s/Rosanna Malouf Peterson*
                                        ROSANNA MALOUF PETERSON
                                        United States District Court Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~15